**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

LISA EINESS,

        Plaintiff,

vs.                                                             No. CIV 14-0140 JB/SMV

TRESCO, INC.,

        Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

    **THIS MATTER** comes before the Court on Defendant Tresco, Inc.'s Motion to Dismiss Claims of Retaliation Under the New Mexico Human Rights Act, Retaliatory Discharge at Common Law, and Constructive Discharge and Consolidated Memorandum Brief in Support of Motion to Dismiss, filed February 18, 2014 (Doc. 5)("MTD").  The Court held a hearing on July 15, 2014.  The primary issue is whether Plaintiff Lisa Einess has alleged a plausible common-law claim of retaliatory discharge against Defendant Tresco, Inc.  The Court concludes that she has not and will thus dismiss her retaliatory discharge claim.  Retaliatory discharge requires either that the plaintiff was fired or that she was constructively discharged, meaning that she was subject to "working conditions so intolerable, when viewed objectively, that a reasonable person would be compelled to resign."  <u>Gormley v. Coca-Cola Enters.</u>, 2005-NMSC-003, ¶ 10, 137 N.M. 192, 195, 109 P.3d 280, 283 (citation omitted)("Essentially, a plaintiff must show that she had no other choice but to quit."  (quoting <u>Yearous v. Niobrara Cnty. Mem'l Hosp.</u>, 128 F.3d 1351, 1356 (10th Cir. 1997))).  Einess was not fired, but rather resigned, and the only difficult

working conditions she alleges are being passed over for a $0.50/hour raise[1] and $600.00 bonus, and being called in for an unspecified number of meetings and training sessions during her leave under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2612 ("FMLA").  See Complaint for Discrimination, Retaliation and Violations of the New Mexico Human Rights Act and Appeal from Order of Nondetermination and Violations of the Family Medical Leave Act (FMLA), 29 U.S.C. Section 2615(A)(1) at ¶¶ 3.3-3.4, at 2-3, filed in state court January 14, 2014, removed to federal court February 14, 2014 (Doc. 1, at 3-7)[2]("Complaint").  The conditions alleged fall short of those required for constructive discharge, and the Court will thus dismiss the claim for retaliatory discharge.  Tresco, Inc. also moves for dismissal of Einess' claim for retaliation in violation of the New Mexico Human Rights Act, N.M. Stat. Ann. § 28-1-1 to -14 ("NMHRA"). Einess conceded dismissal of that claim at the hearing, and so the Court will dismiss it, as well. The Court therefore grants the MTD in its entirety.

## **FACTUAL BACKGROUND**

The Court takes its facts from the Complaint, as it must at the motion-to-dismiss stage. The Complaint's allegations are succinct and somewhat conclusory, and the Court will repeat them in their entirety here rather than risk missing something:

Einess[] is a residen[t] of Las Cruces, New Mexico.

---

[1]The Complaint says only that she was denied "a $.50 raise," but the Court assumes that Einess means a $0.50 per hour raise.

[2]The Defendant's Notice of Removal, filed February 14, 2014 (Doc. 1, at 1-2), is filed under the same document number on CM/ECF, and the two documents have separate, internal paginations that differ from those that CM/ECF stamped.  The Court will cite these documents separately and will use the parties' internal pagination -- the numbers at the bottom center of the page -- rather than CM/ECF's pagination -- the blue numbers at the top right of the page -- to pincite these documents.

. . . Tresco[] is a 501(c)3 non-profit organization funded through public and private sources including state and federal funds, grants and individual donations. . . .

Einess was employed by Tresco as a Community Living Specialist for 12 years.  Einess was a capable employee and a hard worker for Tresco.

On or about September 18, 2013, Einess was suspended by Steve Galuska and Joel Jaime for advocating for two disabled individuals.  The two clients of Tresco were being moved from their home after having lived there for 14 years. Tresco promised them another home where they could continue to be together. However, since two other Tresco clients had died, Tresco decided they would be moved into that home.  The fact that these clients had done so well together and had done so for 14 years did not matter to Tresco so they were placed in separate homes.  Tresco failed to mention the separation to the clients.  Einess went to her supervisors, Galuska and Jaime, and advocated for these two clients but Tresco CEO, Pam Lillibridge, stated that since it was her business to provide services for them, they would have to be placed wherever she wanted them to reside.

It was after having advocated for the Tresco clients that Einess was harassed and retaliated against by four male employees of Tresco, Supervisors Scott Geyer, Gerald Lopez, Joel Jaime, and Steve Galuska.  These supervisors would call Einess in for meetings while she was on FMLA and would fail to show up for the meetings.  She was given training classes to complete in one day when those classes would have taken two working days.  She was repeatedly called while on FMLA to come in and work or for the training classes.

Another form of discrimination and retaliation by Tresco against Einess was that while all employees of Tresco were asked to sign paperwork in the Human Resources Department regarding a $.50 raise and a $600.00 bonus for each, Einess was the only employee not notified or given the raise and bonus.

On October 9, 2013, after the constant harassment, retaliation, and disruption of her FMLA, Einess had no other choice but to resign.  No reasonable person in Plaintiff's position would continue to subject themselves to the harassment and discrimination that Einess endured.  Plaintiff was constructively discharged.

Complaint ¶¶ 1.1-1.2, at 1; id. ¶¶ 3.1-3.5, at 2-3.

## PROCEDURAL BACKGROUND

Einess filed suit in the Third Judicial District Court of New Mexico, County of Doña

Ana, State of New Mexico, on January 14, 2014, see Complaint at 1, and Tresco, Inc. removed

the action to federal court one month later, <u>see</u> Defendant's Notice of Removal, filed February

14, 2014 (Doc. 1, at 1-2).  The Court cannot tell exactly what causes of action Einess alleges.

Specifically, the Court cannot determine (i) whether Einess is alleging that Tresco, Inc. retaliated

against her only for her advocacy for the two disabled individuals, or whether they also retaliated

against her for taking FMLA leave; and (ii) whether each claim is brought under the NMHRA,

the FMLA, or even Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1 to -17

("Title VII").   The Court will therefore once again quote the entire claims section of the

Complaint to avoid mischaracterizing Einess' causes of action:

> The actions of Tresco constitute discrimination against Einess in violation of the New Mexico Human Rights Act.
>
> The actions of Tresco constitute intentional retaliation against Einess because she opposed the discrimination being perpetrated by Joel Jaime, Assistant Manager, Gerald Lopez, Scott Geyer, Department Manager, and Steve Galuska, CLS Supervisor, on behalf of Tresco.
>
> The foregoing conduct by Tresco and its managers, Joel Jaime, Scott Geyer, Gerald Lopez, and Steve Galuska, acting in the course and scope of their management authority for Tresco, amounts to retaliation against Plaintiff for opposing discrimination against disabled clients of Tresco and violations of FMLA.  The conduct of Tresco violates the New Mexico Human Rights Act and as a consequence violates the public policy of the State of New Mexico.

Complaint ¶¶ 4.1-4.3, at 3-4.

Although the Federal Rules of Civil Procedure counsel plaintiffs to plead each cause of

action in a separate paragraph -- advice that most plaintiffs who come before the Court generally

heed -- the Court believes that Einess has alleged more than three claims.  <u>See</u> Fed. R. Civ. P.

10(b) ("A party must state its claims or defenses in numbered paragraphs, each limited as far as

practicable to a single set of circumstances. . . .  If doing so would promote clarity, each claim

founded on a separate transaction or occurrence -- and each defense other than a denial -- must

be stated in a separate count or defense.").  The Court concludes that Einess alleges four causes

of action: (i) discrimination in violation of the NMHRA, <u>see</u> Complaint ¶ 4.1, at 3; (ii) retaliation in violation of the NMHRA, <u>see</u> Complaint ¶ 4.3, at 3-4; (iii) retaliation in violation of the FMLA, <u>see</u> Complaint ¶ 4.3, at 3-4; and (iv) common-law retaliatory discharge by way of constructive discharge, <u>see</u> Complaint ¶ 4.2, at 3.   Tresco, Inc. frames these four claims -- it splits retaliatory discharge into two causes of action, one for "[r]etaliatory [d]ischarge" and another for "[c]onstructive discharge," <u>e.g.</u>, MTD at 2 -- as being an exclusive list of Einess' claims, and Einess never objects to this characterization.

Einess alleges that she has exhausted her administrative remedies before the United States Equal Employment Opportunity Commission ("EEOC") and the Human Rights Division of the New Mexico Department of Labor ("NMHRD"), obtaining an "Order of Nondetermination" from the NMHRD.  Complaint ¶¶ 6.1-6.2, at 4-5.  She does not allege how or if the EEOC resolved her claim.  She seeks damages for lost wages and benefits, and for emotional distress, as well as punitive damages and "liquidated damages," Complaint ¶¶ 5.1-5.2, at 4, and seeks pre- and post-judgment interest on all damages, <u>see</u> Complaint ¶ 7.1, at 5.

For its part, Tresco, Inc. admits that Einess was, "at times," a capable and hard worker for Tresco, and that "two consumers of Tresco's died and two consumers were moved," but denies the rest of the factual allegations in the Complaint.  Defendant's Answer to Plaintiff's Complaint, filed February 19, 2014 (Doc. 7)("Answer").   In addition to its general denial of Einess' allegations, it asserts fourteen defenses not at issue here.  <u>See</u> Answer at 3-5.

Tresco, Inc. filed its MTD four days after removing the case, seeking to dismiss Einess' claims of retaliation in violation of the NMHRA, common-law retaliatory discharge, and common-law constructive discharge.  <u>See</u> MTD at 2.  After briefly outlining the rule 12(b)(6) standard, <u>see</u> MTD at 2-3, Tresco, Inc. argues for dismissal of the NMHRA retaliation claim, <u>see</u>

MTD at 3-6.  As Einess later conceded that claim, the Court will not discuss those arguments here.  See Transcript of Hearing at 2:22-3:5 (taken July 15, 2014)("Tr.")[3](Richard, Court, Delara).

Tresco, Inc. then argues for dismissal of the retaliatory discharge claim, which it treats as separate from the constructive discharge claim.  See MTD at 6-8.  It contends that the claim has two elements: (i) that the plaintiff "performed an act that public policy has authorized or would encourage," or has "refused to do something required . . . by [her] employer that public policy would condemn"; and (ii) that there is "a causal connection" between the plaintiff's actions and the discharge by the employer.  MTD at 6 (alterations in original)(omissions in original)(quoting Shovelin v. Cent. N.M. Elec. Coop., Inc., 1993-NMSC-015, ¶ 24, 115 N.M. 293, 303, 850 P.2d 996, 1006)(internal quotation marks omitted).  Tresco, Inc. argues that "[c]ommon law retaliatory discharge is 'a *limited* public policy exception to the terminable at-will rule,'" MTD at 7 (emphasis in MTD but not source)(quoting Chavez v. Manville Prods. Corp., 1989-NMSC-050, ¶ 16, 108 N.M. 643, 647, 777 P.2d 371, 375), and that, to state a viable claim, Einess "must expressly identify the public policy at issue," MTD at 7 (citing Parker v. John Q. Hammons Hotels, Inc., 914 F. Supp. 467, 471 (D.N.M. 1994)(Vazquez, J.); Chavez v. Manville Prods. Corp., 1989-NMSC-050, ¶¶ 16-18).  Tresco, Inc. contends that Einess' advocacy on behalf of the two unnamed disabled people -- the only act over which she alleges Tresco, Inc. to have retaliated against her -- is not "authorized or encouraged by public policy adopted by the New Mexico legislature or by New Mexico jurisprudence."  MTD at 8.  It further argues that, even if she were able to allege some public policy that protects her actions, her claim would still fail,

---

[3]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

because Tresco, Inc. did not terminate her, but rather she resigned her position.  See MTD at 8.  Tresco, Inc. concedes that the termination requirement of a retaliatory discharge claim can be substituted with a constructive discharge, and this concession brings Tresco, Inc. to its next argument: that Einess was not constructively discharged.  See MTD at 8-10.

Tresco, Inc. argues that "[c]onstructive discharge occurs when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign."  MTD at 8 (quoting Sandoval v. City of Boulder, 388 F.3d 1312, 1325 (10th Cir. 2004))(internal quotation marks omitted).  It contends that the proper test is an objective one, which focuses neither on the employer's subjective intent nor on the employee's subjective perceptions.  MTD at 8-9 (citing Tran v. Trs. of the State Colls. in Colo., 355 F.3d 1263 (10th Cir. 2004)).  Tresco, Inc. contends that the facts set forth in the Complaint fall short of stating a plausible claim of constructive discharge, using the facts of Daemi v. Church's Fried Chicken, Inc., 931 F.2d 1379 (10th Cir. 1991), as a contrast.  See MTD at 9.  Tresco, Inc. contends that, in that case, the United States Court of Appeals for the Tenth Circuit held that a plaintiff's workplace was not "sufficiently intolerable" to constitute constructive discharge, despite that the defendant-employer had "made derogatory remarks about [the plaintiff's] national origin," "ordered him to take a polygraph examination because of his national origin," "belittled and mistreated him at company seminars," and "ordered him to fire or eliminate other Iranians employed by the company."  MTD at 9 (citing 931 F.2d at 1384).  Tresco, Inc. also cites cases for the propositions that, "when a court finds intolerable working conditions, its focus is on constant or repetitive action against the employee," MTD at 9 (citing Mitchell v. Zia Park, LLC, 842 F. Supp. 2d 1316, 1331 (D.N.M. 2012)(Lynch, M.J.)), and that "constructive discharge may be found with 'such factors as an employer's threats of discharge or

suggestions to resign and significant reductions in pay,' or a reduction in rank or 'managerial responsibilities,'" MTD at 9 (quoting <u>Gormley v. Coca-Cola Enters.</u>,[4] 2004-NMCA-021, ¶ 14, 135 N.M. 128, 132-33, 85 P.3d 252, 256-57). Tresco, Inc. concludes that Einess "has merely alleged facts that might demonstrate that her working conditions were unpleasant for a period of 21 days," MTD at 10 (citing Complaint ¶¶ 3.3-3.4, at 2-3), but does not allege that she was demoted, that her job was threatened, that her pay was reduced, that her responsibilities were altered, or that she was demeaned, ridiculed, or called names, <u>see</u> MTD at 10.

Einess responded to the MTD six days after it was filed. <u>See</u> Plaintiff's Response to Defendant's Motion to Dismiss, filed February 24, 2014 (Doc. 9)("Response"). In keeping with her signature style, the Response is short -- with two paragraphs, totaling just over a page, of substantive argument -- and, again, the Court will quote rather than paraphrase her work.

> [The] Complaint provides this Court with factual allegations that show the Plaintiff is entitled to relief that is plausible and above mere speculation. Because Plaintiff was advocating for disabled clients of Tresco, she was subjected to discrimination and harassment. During a period of approved FMLA leave, Tresco interfered with Plaintiff's leave and demanded that Einess attend meetings and training classes. Defendant's conduct violated 29 U.S.C. Section 2617(a)(1) which provides "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter." Plaintiff was denied a raise and bonus provided to other Tresco employees as well. Einess has also alleged a retaliation/discrimination theory available under FMLA.
>
> The New Mexico Supreme Court has identified several sources of public policy that could serve as the basis for a claim of retaliatory discharge. One such source is the New Mexico Human Rights Act. <u>Shovelin v. Cent. N.M. Elec. Coop.</u>, 115 N.M. 293, 850 P.2d 996 (1993). In <u>Shovelin</u>, the New Mexico Supreme Court stated that a legislative enactment such as the Human Rights Act may furnish the public policy statement underlying the tort of Retaliatory Discharge, notwithstanding the fact that the enactment contains its own remedial scheme. <u>Shovelin</u>, 115 N.M. at 303, 850 P2d at 1006. In 1994, the New Mexico

---

[4]This opinion is a different <u>Gormley v. Coca-Cola Enterprises</u> than the identically named 2005 opinion cited throughout this Memorandum Opinion and Order.

Supreme Court reaffirmed the statement in <u>Shovelin</u> that the tort of Retaliatory Discharge may be based on a violation of one of the public policy mandates set out in the Human Rights Act. <u>Gandy v. Wal-Mart Stores, Inc.</u>, 117 N.M. 441, 445, 872 P.2d 859, 863 (1994). The factual allegations clearly demonstrate that Plaintiff engaged in a protected activity when she complained about the treatment afforded disabled clients of Tresco. Plaintiff's approved leave under FMLA was further evidence of protected activity and such leave was interfered with and prompted retaliation against Einess. The discrimination with regard to compensation and the retaliation in forcing Plaintiff to attend meetings and classes while she was on FMLA leave created a work environment that no reasonable employee could endure. Plaintiff considered herself to be constructively discharged. Plaintiff has alleged sufficient facts upon which to base a Retaliatory Discharge claim.

Response at 2-3. It is worth noting that the Response does not concede the NMHRA retaliation claim, nor does it clarify exactly what causes of action Einess alleges.

Tresco, Inc. replied to the Response four days after it was filed. <u>See</u> Defendant Tresco, Inc.'s Reply to Plaintiff's Response to Defendant's Motion to Dismiss, filed February 28, 2014 (Doc. 10)("Reply"). After first reiterating the rule 12(b)(6) standard and arguing for dismissal of the NMHRA retaliation claim, <u>see</u> Reply at 1-4, Tresco, Inc. argues again for dismissal of the retaliatory discharge claim -- mostly repeating the same arguments from the MTD, <u>see</u> Reply at 4-8. It attempts to narrow and then defeat Einess' allegation that she was engaged in conduct that public policy authorizes or protects, arguing that, "[e]ssentially, Plaintiff is attempting to argue that because she 'complained about the treatment afforded disable clients of Tresco,' she has engaged in an activity supported by New Mexico public policy." Reply at 5 (quoting Response at 3). Tresco, Inc. contends, however, that "[t]he public policy at issue under the NMHRA is to encourage individuals to report or take action against *unlawful discrimination*." Reply at 5 (emphasis in original). It contrasts the facts of this case with those of <u>Gandy v. Wal-Mart Stores, Inc.</u>, a case upon which Einess relies. <u>See</u> Reply at 5-6. In that case, Tresco, Inc. contends, the plaintiff was allegedly terminated for filing an NMHRD discrimination complaint

against the defendant-employer.  See Reply at 5-6 (citing 1994-NMSC-040, ¶ 2).  Tresco, Inc. quotes the case as setting forth the rule "that the tort of retaliatory discharge may be based *on a violation* of one of the public policy mandates set out in the [NMHRA]."  Reply at 6 (emphasis in Reply but not source)(quoting 1994-NMSC-040, ¶ 12)(internal quotation marks omitted).  On the constructive discharge element, Tresco, Inc. almost entirely repeats its earlier arguments, except to add that "[c]onstructive discharge only protects against unreasonable harsh working conditions in excess of those faced by co-workers."  Reply at 7 (citing King v. AC&R Adver., 65 F.3d 764 (9th Cir. 1995)).

The Court held its hearing on the MTD on July 15, 2014.  See Clerk's Minutes of the Hearing at 1, filed July 15, 2014 (Doc. 13).  Almost immediately, and without explanation, Einess conceded dismissal of the NMHRA retaliation claim.  See Tr. at 2:22-3:5 (Richard, Court, Delara).  Tresco, Inc. then took up its argument for dismissal of the retaliatory discharge claim, opting to not repeat its arguments from the briefing.  See Tr. at 3:10-4:10 (Delara, Court).  It argued that constructive discharge is an essential component of a retaliatory discharge claim where, as in this case, the defendant did not terminate the plaintiff.  See Tr. at 3:21-24 (Delara). It reiterated that the test for constructive discharge is objective, not subjective, and concluded that "no fact alleged in the complaint . . . rise[s] to that high standard and . . . heavy burden that plaintiff[s] must meet."  Tr. at 4:7-10 (Delara).

Einess then defended her claim, conceding, however, that she would need to prove constructive discharge to prevail on her retaliatory discharge claim.  See Tr. at 6:24-7:4 (Court, Richard).  Einess stated that the protected activity that caused the retaliation was not the advocacy for the two disabled Tresco, Inc. clients, but rather was her FMLA leave.  See Tr. at 4:20-6:23 (Richard).  She focused on her being the only employee singled out for denial of a

raise, and on her supervisors' conduct in calling her in for meetings and training sessions, and telling her "that she had to complete [the classes] in one day when those training classes would take any other person two working days."  Tr. at 5:11-13 (Richard).

The Court stated that it would take the matter under advisement, but that it was inclined to grant the MTD.  See Tr. at 8:12-14 (Court).  It noted that its "sense is that this doesn't rise to the level of constructive discharge," but that it would review the New Mexico case law, because it was more familiar with Title VII's constructive-discharge framework.

## LAW REGARDING RULE 12(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994).  The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff."  (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006))).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is

insufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).   "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted).  The Tenth Circuit stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d at 1247 (citations omitted)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).

Although affirmative defenses must generally be pled in the defendant's answer, not argued on a motion to dismiss, see Fed. R. Civ. P. 8(c), there are exceptions where: (i) the

defendant asserts an immunity defense -- the courts handle these cases differently than other motions to dismiss, see Glover v. Gartman, 899 F. Supp. 2d 1115, 1137-39, 1141 (D.N.M. 2012)(Browning, J.)(citing Pearson v. Callahan, 555 U.S. 223 (2009); Robbins v. Oklahoma, 519 F.3d 1242 (10th Cir. 2008)); and (ii) where the facts establishing the affirmative defense are apparent on the face of the complaint, see Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)("Under Rule 12(b), a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim.  If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under this rule.").  The defense of limitations is the affirmative defense that is most likely to be established by the uncontroverted facts in the complaint.  See 5 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, Federal Practice & Procedure: Civil § 1277, at 643 (3d ed. 2004).  If the complaint sets forth dates that appear, in the first instance, to fall outside of the statutory limitations period, then the defendant may move for dismissal under rule 12(b)(6).  See Rohner v. Union Pac. R.R. Co., 225 F.2d 272, 273-75 (10th Cir. 1955); Gossard v. Gossard, 149 F.2d 111, 113 (10th Cir. 1945);  Andrew v. Schlumberger Tech. Co., 808 F. Supp. 2d 1288, 1292 (D.N.M. 2011)(Browning, J.).  The plaintiff may counter this motion with an assertion that a different statute of limitations or an equitable tolling doctrine applies to bring the suit within the statute; the Tenth Circuit has not clarified whether this assertion must be pled with supporting facts in the complaint or may be merely argued in response to the motion.  Cf. Kincheloe v. Farmer, 214 F.2d 604 (7th Cir. 1954)(holding that, once a plaintiff has pled facts in the complaint indicating that the statute of limitations is a complete or partial bar to an action, it is incumbent upon the plaintiff to plead, either in the complaint or in amendments to it, facts establishing an exception to the affirmative defense).  It appears, from case law in several circuits, that the plaintiff may

avoid this problem altogether -- at least at the motion-to-dismiss stage -- by simply refraining from pleading specific or identifiable dates, see Goodman v. Praxair, Inc., 494 F.3d 458, 465-66 (4th Cir. 2007); Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006); Harris v. New York, 186 F.3d 243, 251 (2d Cir. 1999); Honeycutt v. Mitchell, 2008 WL 3833472 (W.D. Okla. Aug. 15, 2008)(West, J.), and, although the Tenth Circuit has not squarely addressed this practice, the Court has permitted this practice, see Anderson Living Trust v. WPX Energy Prod., LLC, No. CIV 12-0040 JB/KBM, 2014 WL 2750652, at *17, *37-39 (D.N.M. May 16, 2014)(Browning, J.).

### LAW REGARDING CONSTRUCTIVE DISCHARGE UNDER NEW MEXICO COMMON LAW

In a retaliatory discharge case, if the defendant-employer did not actually terminate the plaintiff-employee, then the plaintiff must prove that he or she was constructively discharged. To establish a claim for constructive discharge, a plaintiff must prove that the defendant "made working conditions so intolerable, when viewed objectively, that a reasonable person would be compelled to resign." Gormley v. Coca-Cola Enters., 2005-NMSC-003, ¶ 10 (citing Derr v. Gulf Oil Corp., 796 F.2d 340, 344 (10th Cir. 1986)). "'Essentially, a plaintiff must show that she had no other choice but to quit,'" and "'[t]he bar is quite high' for proving constructive discharge." Gormley v. Coca-Cola Enters., 2005-NMSC-003, ¶ 10 (quoting Yearous v. Niobrara Cnty. Mem'l Hosp., 128 F.3d at 1356; Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1221 (10th Cir. 2002)).

> Examples of adverse employment actions that rise to the level of constructive discharge include a humiliating demotion, extreme cut in pay, or transfer to a position in which the employee would face unbearable working conditions. Other examples include: an employer's threat of being fired; overt pressure to resign and accept early retirement; dramatic cut in pay; and retaliatory measures (e.g., discrimination, unreasonable criticism, involuntary transfer).

> The specific facts of the employment condition, and the severity of its impact upon the employee, are pivotal in determining whether the claim rises to

the level of constructive discharge.  In many cases, the circumstances surrounding resignation are not egregious enough to support a claim.

. . . .

Other factors may be considered to determine whether the worker's resignation was voluntary or de facto compulsory.  For example, some courts require that the employee notify the employer of the problem, and afford the employer a sufficient opportunity to resolve it before leaving.  As an example, in Woodward v. City of Worland, 977 F.2d 1392, 1402 (10th Cir. 1992), the Tenth Circuit suggested that a reasonable person would have filed a formal complaint in response to sexual harassment prior to resigning and barred the worker's claim as a matter of law.

Gormley v. Coca-Cola Enters., 2005-NMSC-003, ¶¶ 11-12, 19 (citations omitted)(internal quotation marks omitted).  In Gormley v. Coca-Cola Enterprises, the Supreme Court of New Mexico denied a plaintiff's constructive discharge claim as a matter of law where the plaintiff was subjected to a pay cut and a "barrage" of constant performance-related criticism from his supervisors, and was reassigned from low-impact cashier duties to jobs involving heavy lifting. See 2005-NMSC-003, ¶¶ 13-18.

New Mexico borrows its constructive-discharge jurisprudence from the Tenth Circuit's Title VII constructive-discharge case law.  See Gormley v. Coca-Cola Enters., 2005-NMSC-003, ¶ 10 ("Although no New Mexico opinion sets forth the elements necessary to prove constructive discharge, numerous federal opinions from the Tenth Circuit discuss that standard."); id. ¶¶ 10-19 (citing eight Tenth Circuit cases and two District of New Mexico cases).  In the Tenth Circuit, "[a] plaintiff may satisfy the third prong [of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973),] by demonstrating that he was constructively discharged."  Baca v. Sklar, 398 F.3d 1210, 1216 (10th Cir. 2005).  While "[a] finding of constructive discharge may be based in part on a discriminatory act such as a failure to promote for discriminatory reasons," the court must

- 15 -

conclude that there are also "aggravating factors that make staying on the job intolerable." Bennett v. Quark, Inc., 258 F.3d 1220, 1229 (10th Cir. 2001)(citations omitted).

The court should disregard both "the employee's subjective view of the workplace environment and the employer's subjective intentions regarding the employee." Baca v. Sklar, 398 F.3d at 1216 (citing Jeffries v. Kansas, 147 F.3d 1220, 1233 (10th Cir. 1998)).  Instead, "[t]he conditions of employment must be objectively intolerable.'"  Sandoval v. City of Boulder, 388 F.3d at 1325 (citation omitted).  Even if the employee resigns "of her own free will" as a result of the employer's conduct, the plaintiff cannot prevail on constructive discharge unless the employee had no "other reasonable choice but to resign in light of those actions." Tran v. Trs. of the State Colls. in Colo., 355 F.3d 1263, 1270 (10th Cir. 2004)(citation omitted).  The Tenth Circuit has concluded that "the bar is quite high in [constructive discharge] cases."  Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1221 (10th Cir. 2002)(citing Sanchez v. Denver Pub. Sch., 164 F.3d at 534).

The Court has recognized the rigor of the constructive-discharge standard.  In Barber v. Lovelace Health Systems, 409 F. Supp. 2d 1313 (D.N.M. 2005)(Browning, J.), the Court concluded that a woman who "resigned because she felt she was being watched, [because] there was a lot of gossip about Spanish-speaking at the [medical] clinic [where she worked], and [because] she was asked by co-workers if she would ever speak Spanish again" had not been constructively discharged.  409 F. Supp. 2d at 1345.  The Court noted that it was especially persuaded by the plaintiff's testimony that "her pay at [the clinic, which had not been adjusted as part of the alleged constructive discharge,] played a role in her decision to resign," and that "if she had not had another job lined up, she would have remained employed."  409 F. Supp. 2d at 1345.  In King v. Salazar, No. CIV 05-0575 JB/WDS, 2009 WL 1300740 (D.N.M. Mar. 2,

2009)(Browning, J.), the Court found that an employee had not been constructively discharged even where he resigned on the eve of his likely termination:

> On September 13, 2007, Rever issued a memorandum placing King on temporary detail for seventy days in Reston, Virginia and directed King to report directly to him. King believes that Rever detailed him to Reston to keep an eye on him. After receiving the official reassignment, King contacted Clark, stating that his babysitting duties made a lengthy detail burdensome and requesting that he be allowed to work from Albuquerque, New Mexico. King states that he was never given an explanation why he had to travel to Reston.
>
> King sent a memorandum to Rever, advising him that King would not report to Reston. Rever sent an e-mail ordering King again to report to Reston by September 24, 2007, but King continued to report to work in Albuquerque instead. On September 28, 2007, Rever sent a memorandum to King, informing him that he was being placed on absent-without-leave status. King contacted Rever on September 28, 2007, again refusing to report to Reston.
>
> On October 2, 2007, Rever notified King through another memorandum that King was "engaging in 'blatant acts of insubordination,'" and ordered King to contact him by close of business on October 4, 2007 or have employment privileges revoked and personnel action taken against him. King notes that Rever's October 2, 2007 memorandum also directs King that he is no longer assigned to OFMC and should refrain from work in that position. King does not recall attempting to contact Rever after the October 2 memorandum, and on October 18, 2007, Rever issued a memorandum proposing King's removal from federal service. King notes that the memorandum states that Clark would "make a final determination on [the] proposal." King states that Clark has never responded to his e-mail and that, upon receiving the memorandum proposing his removal, he realized he would be fired and therefore decided to tender his resignation.
>
> . . . .
>
> Even if the Court assumed that it was reasonable for King to have believed that a referral to Clark amounted to threat of termination, King's resignation would still be voluntary . . . . King was given an alternative to resignation. He had the option of contesting the proposal and submitting information to Clark about why he should not be fired.

2009 WL 1300740, at *2-3, *11 (citations omitted).

## ANALYSIS

The Court will dismiss Einess' claim of retaliatory discharge, because she has failed to plead facts that give rise to a plausible inference that she was constructively discharged. A key component of a retaliatory discharge claim is that the plaintiff was, in fact, discharged -- either directly terminated or subjected to such intolerable working conditions that any reasonable person would feel compelled to resign. See Gormley v. Coca-Cola Enters., 2005-NMSC-003, ¶¶ 9-19. Einess has not put forth the exceptional showing required to clear this bar under New Mexico law.

The Court first clarifies that the separation of retaliatory discharge and constructive discharge into two separate claims -- which Tresco, Inc., not Einess, does -- is incorrect. Constructive discharge is an alternative way of establishing the termination component of a retaliatory discharge claim.

> Constructive discharge is not an independent cause of action, such as a tort or a breach of contract. Instead, constructive discharge is a doctrine that permits an employee to recast a resignation as a de facto firing, depending on the circumstances surrounding the employment relationship and the employee's departure. See Turner v. Anheuser-Busch, Inc., 876 P.2d 1022, 1030 (Cal. 1994)("Even after establishing constructive discharge, an employee must independently prove a breach of contract or tort in connection with employment termination in order to obtain damages for wrongful discharge."). An employee who resigns from employment must prove constructive discharge as part of establishing a wrongful termination.

Gormley v. Coca-Cola Enters., 2005-NMSC-003, ¶ 9.

To show that she was constructively discharged, Einess must allege that Tresco, Inc. subjected her to "working conditions so intolerable, when viewed objectively, that a reasonable person would be compelled to resign." Gormley v. Coca-Cola Enters., 2005-NMSC-003, ¶ 10 (citing Derr v. Gulf Oil Corp., 796 F.2d 340, 344 (10th Cir. 1986)). "Essentially, [she] must show that she had no other choice but to quit." Gormley v. Coca-Cola Enters., 2005-NMSC-003,

¶ 10 (quoting <u>Yearous v. Niobrara Cnty. Mem'l Hosp.</u>, 128 F.3d at 1356)(internal quotation marks omitted). "'The bar is quite high' for proving constructive discharge." <u>Gormley v. Coca-Cola Enters.</u>, 2005-NMSC-003, ¶ 10 (quoting <u>Garrett v. Hewlett-Packard Co.</u>, 305 F.3d at 1221).

Einess alleges only modest hardships which fall short of what New Mexico law requires to establish constructive discharge. She alleges that she was "harassed and retaliated against by four male employees," and subjected to "constant harassment, retaliation, and disruption of her FMLA." Complaint ¶ 3.3, at 2; <u>id.</u> ¶ 3.5, at 3. These allegations, however, are legal conclusions designed to check off the elements of a retaliatory discharge claim, and not factual assertions, and the Court thus accords them no weight. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678 (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555)(holding that a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient to clear the rule 12(b)(6) bar).

Einess alleges some facts: (i) that she was called into the office for meetings while on her FMLA leave and that the supervisors who called her would then fail to appear for the meeting; (ii) that she was assigned training classes during her leave and given unrealistic deadlines to complete them; and (iii) that she was the sole employee not invited to receive a $0.50/hour raise and a $600.00 bonus. <u>See</u> Complaint ¶ 3.3-3.4, at 2-3. The Court will analyze the first two allegations together. At the threshold, the Court notes that they might constitute an FMLA violation; Einess brings such a claim, and the MTD does not seek to dismiss it, so the Court will not opine further. They do not, however, satisfy the legal standard for constructive discharge. Notably absent from the Complaint is any mention of (i) how many times these training sessions and meetings were called, (ii) Tresco, Inc.'s flexibility with regard to rescheduling some or all of these events, and (iii) relatedly, what the consequences would be if Einess failed to attend a

meeting or complete a training class as directed.  If she was assigned two training classes and called to two meetings over the course of a twelve-week leave period[5] -- which is all the Complaint alleges by using plural forms but declining to specify numbers -- allowed to reschedule with good cause, and subject only to an informal reprimand for failure to comply, then that burden constitutes only a minor annoyance.  If, on the other hand, she was assigned daily or near-daily training classes, constantly called to meetings only to find them canceled upon her arrival, and threatened with termination or other serious sanction if she missed any of Tresco, Inc.'s inflexible deadlines or appointments, then those working conditions might rise to the level of constructive termination.  The Court cannot, however, assume such facts when they are not in the Complaint; such assumptions go beyond the "reasonable inferences" to which Einess is entitled and into the realm of fanciful speculation.[6]  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322.

Turning to the third allegation, Einess was the only Tresco, Inc. employee to be passed over for what was otherwise an across-the-board raise and bonus package.[7]  The raise and bonus

---

[5]Einess does not specify the length of her leave period.  The FMLA entitles all eligible employees to "a total of 12 workweeks of [unpaid] leave during any 12-month period" when any one of a number of events occurs in the employee's household, including pregnancy, the birth and adoption of a child, or the serious illness of a child, spouse, or parent.  29 U.S.C. § 2612(a)(1).

[6]The Court notes that, reading between the lines of the Complaint, it appears that Einess is referring to isolated incidents.  When she alleges that her "supervisors would call [her] in for meetings while she was on FMLA and would fail to show up for the meetings," that allegation sounds to the Court like one or two specific instances.  Complaint ¶ 3.3, at 3.  The same is true of the allegation that she was "given training classes to complete in one day when those classes would have taken two working days."  Complaint ¶ 3.3, at 3.  The Court will not use these inferences in its analysis, because, under rule 12(b)(6), it is required to view all allegations in "the light most favorable to" Einess, Smith v. United States, 561 F.3d at 1098, but it states them in passing to give the parties a better idea of how such assertions might look under a different legal standard.

[7]Again reading between the lines of the Complaint, it is not clear that she was actually passed over for the raise.  The wording of the Complaint -- "all employees of Tresco were asked

were for relatively small amounts, and those amounts do not constitute a constructive discharge. It is true that the same sums of money mean different things to different people, and the Complaint does not set forth Einess' total earnings: if she earned a six-figure salary from Tresco, Inc., then the denial of a $0.50/hour raise and a $600.00 bonus would not constitute constructive discharge; if, on the other hand, she earns minimum wage, then denial of those same benefits -- benefits extended to all of her coworkers -- could be perceived as a targeted message directing her to resign, and could even make continued sustenance difficult because of the rising cost of living and inflation.  Even assuming that Einess made minimum wage -- the best-case scenario for her argument -- the raise would amount only to a six-and-two-thirds percent increase in pay, and the bonus would amount only to four percent of her annual income, assuming she worked forty hours per week for fifty weeks out of the year.[8]  See N.M. Stat. Ann. § 50-4-22A (providing that the minimum wage in New Mexico is $7.50 per hour).  Courts have found that salary cuts of nine, twelve, and twenty-five-and-one-half percent did not constitute constructive discharge.  See King v. AC&R Adver., 65 F.3d at 767-68 (holding that a twenty-five-and-one-half percent salary

---

to sign paperwork in the Human Resourced Department regarding a $.50 raise and a $600.00 bonus for each, [and] Einess was the only employee not notified or given the raise and bonus" -- suggests that Einess would have received the raise and bonus had she signed up for it. Complaint ¶ 3.4, at 3 (emphasis added).  She may not have been notified of the requirement to sign paperwork -- perhaps inadvertently -- because she was on leave, and she may have even been given the opportunity to receive the raise and bonus upon completion of her leave.  The Court will, however, indulge all inferences in Einess' favor, and assume that Tresco, Inc. specifically denied Einess a raise and bonus package that was offered to every other employee. If the facts are more invidious than they seem to be, the Court suggests that Einess amend her Complaint to allege them if she plans to reassert her retaliatory discharge claim at a later date.

[8]Minimum wage in New Mexico is $7.50 per hour, so assuming that Einess worked a standard forty-hour workweek for fifty weeks out of the year, she would earn $15,000.00 per annum.  A $600.00 bonus would amount to four percent of that figure.  New Mexico's minimum wage is higher than the federal minimum wage, and New Mexico employees are entitled to the greater figure.  See 29 U.S.C. § 206(a)(1)(C) (providing that the federal minimum wage is $7.25 per hour).

reduction did not constitute constructive discharge); McCann v. Litton Sys., Inc., 986 F.2d 946, 952 (5th Cir. 1993)(holding that a twelve percent decrease in pay did not constitute a constructive discharge); Gioia v. Pinkerton's Inc., 194 F. Supp. 2d 1207 (D.N.M. 2002)(Black, J.)(holding that a nine percent decrease in pay, from eleven dollars per hour to ten dollars per hour, did not constitute constructive discharge).  If these larger pay differentials do not constitute constructive discharge, then neither does Einess'.

Even if, however, the amount of money at issue could be considered legally sufficient for constructive-discharge purposes, Tresco, Inc.'s actions do not constitute constructive discharge, because the money was denied Einess in the form of a withheld raise, rather than a pay reduction.  One constant among the Supreme Court of New Mexico and Tenth Circuit cases finding constructive discharge is that the employer changed the status quo of the employee's job: a reduction in pay, decreased responsibilities, harsher working conditions, a demotion in job title. The Court has yet to find a case that recognizes that an employer maintaining an employee's working conditions in the same state constitutes, in itself, a constructive discharge.[9]  Even in circumstances in which an employee's pay is reduced, the courts have typically found that it does not constitute constructive discharge.  See, e.g., Gormley v. Coca-Cola Enters., 2005-NMSC-003, ¶¶ 14-15; King v. AC&R Adver., 65 F.3d at 767-68 (holding that a salary reduction from $235,000.00 to $175,000.00 did not constitute constructive discharge); McCann v. Litton Sys., Inc., 986 F.2d 946, 952 (5th Cir. 1993)(holding that a twelve percent decrease in pay and a loss of some managerial responsibilities did not constitute a constructive discharge);  Gioia v. Pinkerton's Inc., 194 F. Supp. 2d 1207 (D.N.M. 2002)(Black, J.)(holding that a loss of one dollar

---

[9]Of course, an employer's failure to promote or advance an employee may be actionable in other contexts, but it is not a constructive discharge.

per hour did not constitute constructive discharge).  Because Einess has not plausibly alleged constructive discharge, the Court will dismiss her retaliatory discharge claim.

**IT IS ORDERED** that Defendant Tresco, Inc.'s Motion to Dismiss Claims of Retaliation Under the New Mexico Human Rights Act, Retaliatory Discharge at Common Law, and Constructive Discharge and Consolidated Memorandum Brief in Support of Motion to Dismiss, filed February 18, 2014 (Doc. 5), is granted.  The Court will dismiss Plaintiff Lisa Einess' claim for retaliation under the New Mexico Human Rights Act, N.M. Stat. Ann. § 28-1-1 to -14, and her claim for common-law retaliatory discharge and constructive discharge.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Dennis L. Richard
Law Office of Dennis L. Richard
El Paso, Texas

    *Attorney for the Plaintiff*

John K. Ziegler
Alisa Wigley-Delara
Conklin, Woodcock & Ziegler, PC
Albuquerque, New Mexico

    *Attorneys for the Defendant*